**HOLLISTER LAW OFFICE, APC**  (Bar No. 302125)
Bradley C. Hollister (bradley@hollisterlawoffice.com)
228 W. Carrillo Street, Suite D
Santa Barbara, CA 93101
(805) 284-0711
Attorneys for Plaintiff

**ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP**
Robert A. Soloway (rsoloway@rssslaw.com)
David Stern (dstern@rssslaw.com)
100 Lafayette Street
New York, New York 10013
(212) 571-5500
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SHELLEY McCONNELL**,** fiduciary and representative
of the Estate of MOHAMED YUSUF, Deceased,

        Plaintiff,

  vs.

THE UNITED STATES OF AMERICA,

        Defendant.

**COMPLAINT**

**Federal Tort Claims Act**
(28 USC §§ 1346(b), 2671 et seq.)

Plaintiff, SHELLEY McCONNELL, as court-appointed fiduciary and representative of the Estate of MOHAMED YUSUF, Deceased, hereby alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.   Federal inmates committed to the custody and care of the Attorney General to serve criminal sentences are totally dependant upon government agents for their survival, including for food, shelter, medical care, and personal security.

2.  This action on behalf of the Deceased is brought under the Federal Tort Claims Act and seeks compensatory damages for pain, suffering, and injury to Decedent's person, and for wrongful death.

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States of America, specifically, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671-2680 (hereinafter, the "FTCA").

4.   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1402(b) as that is the judicial district in which the acts or omissions complained of occurred.

1

**COMPLAINT**

**PARTIES**

5.    Plaintiff, SHELLEY McCONNELL, is the duly appointed Special Administrator, nominated by the surviving spouse of the Decedent, Kowsar Moalin Mohamed, and empowered by the Superior Court of California, County of Santa Barbara, to initiate and prosecute the instant litigation on behalf of the Decedent's Estate, which Estate is comprised of Mohamed Yusuf's surviving spouse and their three children, thier son, Ahmed Yusuf (DOB: July 7, 2012); their daughter, Aliya Yusuf (DOB: August 5, 2011); and their son, Shuyab Yusuf (DOB: July 17, 2010).

6.    During his life, MOHAMED YUSUF (hereinafter, the "Decedent" or "Yusuf"), was a citizen of the country of Sweden, extradited to the United States from Djibouti on or about November 12, 2012 to face federal criminal charges. In 2015, he pled guilty in the United States District Court for the Eastern District of New York to rendering material aid to a designated foreign terrorist organization based upon his participation in the Somali civil war as a soldier in the fighting forces of Harakat al-Shabaab al-Mujahideen,  commonly known as al-Shabaab.   From the time of his extradition until his death, MOHAMED YUSUF was continuously held in custody by the United States Department of Justice, Bureau of Prisons (hereinafter "BOP").

7.    Defendant, UNITED STATES OF AMERICA, is a sovereign entity and nation, which employed the agents, servants and employees whose negligent and careless acts proximately caused Decedent's death.   The United  States is liable for all of the below described conduct of its agents because each acted within the scope of his or her employment for the United States.

8.    Upon information and belief, BOP is a "federal agency" as that term is defined in 28 U.S.C. § 2671.

**CONDITIONS PRECEDENT TO SUIT**

9.    On May 20, 2022, Plaintiff timely submitted an administrative claim for relief to the Department of Justice, Western Regional Office, Stockton California, which was filed under Administrative Claim Number TRT-WXR-2022-06637.  Such claim was denied by written notice dated December 8, 2022, received by counsel on December 19, 2022.  The instant Complaint is filed within six months of receipt of denial, and Plaintiff has accordingly complied with the jurisdictional prerequisites to commencement of this action.

**COMPLAINT**

## STATEMENT OF UNDERLYING FACTS

10. MOHAMED YUSUF's life was cut short on May 25, 2020 due to the failure of the United States, by its agents and employees, to secure for him available medical treatment necessary for his survival after he contracted COVID-19, grew increasingly and obviously ill, and ultimately died.

11. A 37 year old man in sturdy health before becoming infected with COVID-19, Decedent was, at all relevant times, serving a 132 month prison sentence at the Federal Correctional Institution Lompoc, 3600 Guard Road, Lompoc, California ("Lompoc"), the lower security section of the Federal Correctional Complex to which FCI Lompoc belongs.

12. At the time of his death, Plaintiff's Decedent had approximately one year left to serve before his release date.

13. Decedent tested positive for COVID-19 on or about May 7, 2020.

14. At the time, the Lompoc Correctional Complex was in the midst of an out of control COVID-19 outbreak.

15. In the ensuing weeks after testing positive, Decedent became increasingly ill and increasingly unable to dispatch his activities of daily living without assistance.

16. Although sick and getting sicker, Decedent's medical needs were not competently addressed by BOP medical, correctional and managerial staff despite awareness on their part that his illness was worsening.

17. For one to two weeks before his May 25, 2020 death, Decedent was visibly weakened and chronically and desperately short of breath, which conditions were obvious and known to both fellow inmates and the BOP medical, correctional, and managerial staff.

18. For approximately ten days before his death, the Decedent was too weak and short of breath to get his own meals, such that other inmates on his floor retrieved them for him.

19. Upon information and belief, medical, correctional and managerial staff were specifically aware of decedent's profoundly weakened condition in the weeks leading to his death, including his aforesaid inability to even retrieve and carry his own food tray.

20. Instead of helping him, or making sure he got medical attention during the prevailing lockdown conditions -- which made reporting for medical treatment very difficult -- Decedent was

taunted by several correctional officers, who made remarks like telling him, "I guess you won't be eating if you can't make it up the stairs to get your food."

21. Multiple correctional officers witnessed the Decedent's daily physical decline, but took no steps to call his condition to the attention of medical staff.

22. Upon information and belief, in May 2020, decedent visited the medical unit several times in increasingly desperate efforts to secure care. Medical providers interacted with him in the medical unit and in the dorm in the days and weeks prior to his death, but provided no meaningful care and no transfer to a hospital for off-site evaluation, but instead, on May 21, 2020, prescribed the Decedent an albuterol inhaler, which was completely ineffective.

23. Less than a week before his death, Decedent told one medical provider who visited B Dorm regularly during the May, 2020 COVID outbreak that there was something very wrong with his breathing, but Decedent was told by the provider he did not have a fever and therefore would be fine.

24. An Emergency Medical Technician who was also a BOP Health Services Administrator encountered the deceased in his final weeks of life and was aware of his deteriorating condition, but took no steps, despite his administrative and medical responsibilities, to secure necessary, potentially life-saving treatment to address the Decedent's declining health in the days which immediately preceded his death.

25. On or about May 21, 2021, a group of approximately five to seven sick inmates, including the Decedent, visited the medical unit together in the hope of receiving medical evaluation and meaningful treatment.

26. Upon information and belief, at the conclusion of the visit, all of the sick inmates except the Decedent were sent to a tent located behind the commissary which was had been set up to isolate patients infected with COVID-19.

27. No medical care was rendered there, but a correctional officer was posted in the tent and was able to take action in the event of a medical emergency, including promptly calling for medical staff.

28. The Decedent was the only member of the group visit who was sent back to his dorm, instead of to the tent.

4

**COMPLAINT**

29.  As a result of the aforesaid lack of attention and lack of staff presence in B Dorm during Decedent's final hours of life, a lengthy delay in providing medical attention to the Decedent ensued while he struggled for air, lost consciousness, and died.

30.  As a direct consequence of such delay, timely and indicated medical steps -- including oxygen administration, mouth to mouth resuscitation, advanced cardiac life support treatment with breathing -- were never provided, and Mr. Yusuf lost his life.

31.  When he was symptomatic -- coughing, physically weak, and struggling for air for many days -- BOP medical, correctional, and managerial staff disregarded known and excessive risks to Decedent's medical needs by refusing to take him to an off-site hospital for treatment, *or* to provide meaningful care at the facility itself.

32.  For weeks before his death, the Decedent was visibly weakened and chronically and desperately short of breath.

33.  On the day he died, Decedent was unable to breathe.  He gasped for air and he prayed. Eventually, he lost consciousness, lapsed into acute respiratory distress, and died without ever receiving advanced life support and oxygen due to the failure of BOP to deliver competent medical treatment for his condition.

34.  Among the medical and correctional staff who belatedly responded to Decedent's final medical emergency was a nurse practitioner who, upon information and belief, refused to administer mouth to mouth resuscitation, brought no oxygen to the scene, and brought no bag valve mask (at times also referred to as an Ambu bag) to force feed room air or oxygen into Decedent's lungs, which was medically necessary given his condition.

35.  Due wholly and solely to the these and other negligent acts and omissions of agents of the United States, the Decedent was caused to sustain severe personal injuries, suffering, and death.

### FEDERAL TORT CLAIMS ACT LIABILITY FOR NEGLIGENCE

36.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-35.

37.  Employees of the United States violated the FTCA, 28 U.S.C. § 1346(b).  This action is brought under provisions of California Civil Code §§ 1714 and 377.60.

38. While in custody at Lompoc FCI, the United States was obligated to Decedent to provide medical treatment with a degree of skill, knowledge and care ordinarily possessed and exercised by members of the medical profession under similar circumstances.

39. Instead of doing so, identifiable United States agents failed to provide care and treatment that was reasonable and consistent with applicable community standards of care, causing Decedent to suffer and die.

40. The United States, through its agents, violated its explicit statutory duty to safeguard plaintiff, and to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042.

41. As a specific result of the breaches of duty alleged, Decedent suffered pain and death from a life-threatening condition from which he suffered for nineteen consecutive days. When finally treated emergently on the day of his death (although still incompetently), it was too late for the Decedent's life to be saved by the medically inadequate measures applied.

42. The injuries suffered by Decedent were a foreseeable consequence of the failure of the United States to deliver appropriate and timely medical treatment and attention.

43. The injuries sustained by Decedent were a direct and proximate result of the failure of United States agents, including correctional officers, to properly report, diagnose, and address Decedent's particular COVID-19 presentation.

44. As a result of the aforesaid negligent acts and omissions of the United States, Plaintiff's Decedent has suffered compensable injury and damage, including death.

**CLAIM FOR LOSS OF COMPANIONSHIP**

45. Plaintiff repeats and re-alleges the content of paragraphs one through forty-five as though fully set forth at length herein.

46. The actions by the United States in this case -- including but not limited to, failing to adequately monitor and treat the decedent's contracted and progressively worsening illness, and failure to deliver necessary medical care in a health emergency while he was an inmate and consequently not able to secure medical care for himself -- were the direct and proximate cause of MOHAMED YUSUF's death on May 25, 2020.

47.    The aforesaid reckless and negligent actions of medical and correctional staff at Lompoc FCI caused MOHAMED YUSUF to lose his life, legally and factually damaging his surviving spouse and children by depriving them of his love, right of support, companionship, comfort, care, assistance, protection, affection, and guidance.

48.    MOHAMED YUSUF's surviving spouse and children seek compensation from the United States for pecuniary and non-pecuniary injuries in an amount to be determined at trial.

### WRONGFUL DEATH AND SURVIVAL ACTION

49.    Plaintiff repeats and re-alleges the content of paragraphs one through forty-eight as though fully set forth at length herein.

50.    Plaintiff brings this action on behalf of MOHAMED YUSUF's successors in interest seeking general damages compensating them for the deprivation of his love, companionship, financial support and guidance.

51.    As a direct and proximate result of negligence, and the wrongful acts and omissions of the United States, Plaintiff also seeks survival damages on Decedent's behalf for the severe and painful injuries he endured prior to death, including fear of death.   Plaintiff's action herein accordingly seeks survival action damages on Decedent's behalf in this action.

### PRAYER FOR RELIEF

WHEREFORE, Shelley McConnell, fiduciary and representative of the Estate of MOHAMED YUSUF, prays for relief of this Honorable Court as follows:

A.  For an award of survival damages for the pain, suffering, and emotional trauma suffered by the Decedent due to the reckless and negligent conduct of the United States;

B.  For economic and non-economic damages suffered by the decedent's surviving spouse and children related to loss of earnings and loss of love, support, and guidance from Decedent according to the proof at trial;

C.  For the costs of this action;

D.  And for such other relief as the Court deems just and reasonable.

Dated:   June 2, 2023

**HOLLISTER LAW OFFICE, APC**
Attorneys for Plaintiff
228 W. Carrillo Street, Suite D
Santa Barbara, CA 93101
(805) 284-0711

/s/    *Bradley C. Hollister*
        Bradley C. Hollister

**ROTHMAN, SCHNEIDER, SOLOWAY &
    STERN, LLP**
Attorneys for Plaintiff
100 Lafayette Street, Suite 501
New York, New York 10013

/s/    *Robert A. Soloway*
        Robert A. Soloway

8